**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LASHAWNDA PORTER, individually<br>and on behalf of all others<br>similarly situated, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | No. |
| v. | ) <br> ) | |
| WIDEOPENWEST, INC.,<br>WIDEOPENWEST ILLINOIS, LLC, and<br>WIDEOPENWEST ILLINOIS, INC.,<br><br>Defendants. | ) <br> ) <br> ) <br> ) <br> ) | JURY DEMANDED |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff, LaShawnda Porter, individually and on behalf of all other persons similarly situated, known and unknown, through her attorneys, complains against Defendants WideOpenWest, Inc. ("WOW, Inc."), WideOpenWest Illinois, LLC ("WOW Illinois, LLC") and WideOpenWest Illinois, Inc. ("WOW Illinois, Inc."), as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1.      This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* ("IWPCA"), for Defendants' failure to pay Plaintiff and other similarly situated persons all earned regular and overtime pay for all time worked.

2.      Defendants are a broadband provider that offers internet, cable and telephone service to customers in Illinois, Indiana, Michigan, Ohio, Tennessee, Florida, Alabama, Georgia, South Carolina and Maryland.

3. Defendants manage, control and operate customer service call centers within this judicial district and in Maryland and Colorado.

4. At their call centers in Illinois, Maryland and Colorado, Defendants manage and control the telephone-dedicated customer service representatives who are the putative class members in this lawsuit.

5. Defendants knowingly required and/or permitted Plaintiff, who worked as a telephone-dedicated customer service representative, and other similarly situated telephone-dedicated customer service representatives, to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, reading company issued emails and instructions, and completing customer service calls.

6. The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages approximately 10 to 15 minutes per day per person.

7. Plaintiff brings her FLSA overtime claim as a collective action pursuant to 29 U.S.C. 216(b) on behalf of telephone dedicated employees who worked for Defendants in the United States. Plaintiff brings her IMWL overtime claims and IWPCA unpaid wage claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Illinois telephone dedicated employees.

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction over Plaintiff's FLSA claims in this action under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. This Court has supplemental jurisdiction over all class claims in this action under 28 U.S.C. § 1367.

## THE PARTIES

### i.     *Plaintiff*

10.     Plaintiff LaShawnda Porter is an individual who Defendants employed from approximately March 2014 to approximately December 2015 as an hourly, non-exempt telephone-dedicated employee in Defendants' call center in Naperville, Illinois.  Plaintiff Porter resides in and is domiciled within this judicial district.  A copy of Plaintiff's opt-in form is attached hereto as Exhibit 1.

### ii.     *WideOpenWest, Inc.*

11.     WOW, Inc. is a publicly traded company and the sixth largest cable operator in the United States ranked by number of customers.

12.     WOW, Inc. provides broadband internet, cable television and landline telephone services that are offered and delivered to communities and customers in various states and locations, including in Illinois, Indiana, Michigan, Ohio, Tennessee, Florida, Alabama, Georgia, South Carolina and Maryland.

13.     WOW, Inc. is incorporated in Delaware.

14.     WOW, Inc.'s corporate headquarters are located at 7887 E. Belleview Avenue, Suite 1000, Englewood, Colorado 80111.

15.     WOW, Inc. has a corporate structure consisting of wholly-owned subsidiaries and operating units.

16.     WOW, Inc. operates and provides its services directly and through wholly-owned subsidiaries and/or entities that are controlled and managed directly and/or indirectly by WOW, Inc.

17.     During at least some portion of the last three years, WOW, Inc. operated through

entities and companies that include WOW Illinois, LLC and WOW Illinois, Inc.

18.    At all times pertinent hereto, WOW, Inc. controlled and managed WOW Illinois, LLC and WOW Illinois, Inc.

19.    WOW, Inc. had approximately $1,240,000,000.00 in 2017 revenue.

20.    At all times pertinent hereto, WOW, Inc. was the parent corporation of WOW Illinois, LLC.

21.    WOW, Inc. engages in the business of providing broadband internet, cable television and landline telephone services to residents in, among other places, the Northern District of Illinois.

22.    During the three years preceding the filing of this Complaint, WOW, Inc. owned, managed and controlled "call centers" in Illinois, Maryland and Colorado where telephone-dedicated employees similar to Plaintiff handle phone calls regarding broadband internet, cable television and telephone services offered by WOW, Inc. and its wholly-owned and controlled affiliates and subsidiaries.

23.    At all times pertinent hereto, WOW, Inc. directed, implemented and controlled the wage and hour and employment policies and practices at issue in this lawsuit. Further, WOW, Inc. established, originated, and ratified the wage and hour and employment policies and practices applied to Plaintiff and the putative class members.

24.    Alternatively, at all times pertinent hereto, WOW, Inc., jointly with WOW Illinois, LLC and WOW Illinois, Inc., directed, implemented and controlled the wage and hour and employment policies and practices at issue in this lawsuit. Further, WOW, Inc., jointly with WOW Illinois, LLC and WOW Illinois, Inc., established, originated, and ratified the wage and hour and employment policies and practices applied to Plaintiff and the putative class members.

25.     At all times pertinent hereto, WOW, Inc. was the "employer" of Plaintiff and the putative class and collective, as the term "employer" is defined under the FLSA, IMWL and IWPCA.  Alternatively, WOW, Inc. jointly employed Plaintiff and the putative class and collective members with its wholly-owned and controlled subsidiaries, including WOW Illinois, LLC and WOW Illinois, Inc.  Accordingly, WOW, Inc. is jointly and severally liable for the FLSA, IMWL and IWPCA violations described herein.

### iii.     WOW Illinois, LLC

26.     WOW Illinois, LLC is a Delaware manager-managed limited liability company that engages in business in Illinois.

27.     WOW Illinois, LLC has registered WOW Illinois, Inc. as its manager with the Illinois Secretary of State.

28.     WOW Illinois, LLC's Illinois registered agent is located in Chicago, Illinois.

29.     WOW Illinois, LLC's corporate headquarters is located at 7887 E. Belleview Avenue, Suite 1000, Englewood, Colorado 80111.

30.     WOW Illinois, LLC and WOW Illinois, Inc. do business as WOW, Inc. and as WOW! Internet, Cable and Phone.

31.     At all times pertinent hereto, WOW Illinois, LLC is and was a company that provides broadband internet, cable television and landline telephone services that are offered and delivered to communities and customers in Illinois and in the Northern District of Illinois.

32.     At all times pertinent hereto, WOW Illinois, LLC is and was a wholly-owned and/or wholly-controlled subsidiary of WOW, Inc.

33.     At all times pertinent hereto, WOW Illinois, LLC directed, implemented and controlled the wage and hour and employment policies and practices at issue in this lawsuit.

Further, WOW Illinois, LLC established, originated, and ratified the wage and hour and employment policies and practices applied to Plaintiff and the putative class members.

34.     Alternatively, at all times pertinent hereto, WOW Illinois LLC, jointly with WOW, Inc. and WOW Illinois, Inc., directed, implemented and controlled the wage and hour and employment policies and practices at issue in this lawsuit.  Further, WOW Illinois, LLC, jointly with WOW, Inc. and WOW Illinois, Inc., established, originated, and ratified the wage and hour and employment policies and practices applied to Plaintiff and the putative class members.

35.     At all times pertinent hereto, WOW Illinois, LLC was the "employer" of Plaintiff and certain members of the putative class and collective, as the term "employer" is defined under the FLSA, IMWL and IWPCA.  Alternatively, WOW Illinois, LLC jointly employed Plaintiff and the putative class and collective members with its parent corporation, WOW, Inc., and/or its manager, WOW Illinois, Inc.  Accordingly, WOW Illinois, LLC is jointly and severally liable for the FLSA, IMWL, and IWPCA violations described herein.

> ### iv.     WOW Illinois, Inc.

36.     WOW Illinois, Inc. is a Delaware corporation.

37.     WOW Illinois, Inc. is owned and/or controlled by WOW, Inc.

38.     WOW Illinois, Inc. merged with WOW, Inc. on or about April 1, 2016.

39.     At all relevant times, WOW Illinois, Inc. is and was the manager of WOW Illinois, LLC.

40.     Prior to its April 1, 2016 merger with WOW, Inc., WOW Illinois, Inc.'s corporate headquarters was located at 7887 E. Belleview Avenue, Suite 1000, Englewood, Colorado 80111.

41.     WOW Illinois, Inc., directly and/or through and with WOW, Inc. and/or WOW Illinois, LLC, offers broadband internet, cable television and landline telephone services in various states and locations, including in Illinois and in the Northern District of Illinois.

42.     At all times pertinent hereto, WOW Illinois, Inc. directed, implemented and controlled the wage and hour and employment policies and practices at issue in this lawsuit. Further, WOW Illinois, Inc. established, originated, and ratified the wage and hour and employment policies and practices applied to Plaintiff and the putative class members.

43.     Alternatively, at all times pertinent hereto, WOW Illinois, Inc., jointly with WOW, Inc. and WOW Illinois, LLC, directed, implemented and controlled the wage and hour and employment policies and practices at issue in this lawsuit. Further, WOW Illinois, Inc., jointly with WOW, Inc. and WOW Illinois, LLC, established, originated, and ratified the wage and hour and employment policies and practices applied to Plaintiff and the putative class members.

44.     At all times pertinent hereto, WOW Illinois, Inc. was the "employer" of Plaintiff and certain members of the putative class and collective, as the term "employer" is defined under the FLSA, IMWL and IWPCA. Alternatively, WOW Illinois, Inc. jointly employed Plaintiff and certain members of the putative class and collective members with its affiliates and parent corporation, including WOW, Inc. and WOW Illinois, LLC. Accordingly, WOW Illinois, Inc. is jointly and severally liable for the FLSA, IMWL and IWPCA violations described herein.

## FACTUAL ALLEGATIONS

### A.     Defendants' Practice of Requiring and/or Permitting Telephone-Based Hourly Employees to Work Before the Start of Their Scheduled Shift Time

45.     Defendants operated and have operated "call centers" in Illinois, Maryland and Colorado where telephone-dedicated employees similar to Plaintiff handle phone calls regarding

broadband internet, cable television and telephone services offered by Defendants to their customers.

46.     Plaintiff and the putative class and collective members worked as customer service representatives and handle phone calls with customers and field technicians regarding the phone, television and broadband internet services offered by Defendants.

47.     At their call centers, Defendants required Plaintiff and similarly situated phone-based employees to be ready to handle a call at the start of their scheduled shift times.

48.     In order to be ready to handle a call, Plaintiff and similarly situated employees had to first boot up their computers and open various software programs necessary for handling a call.

49.     Plaintiff and similarly situated employees had to be available to handle calls until the end of their scheduled shift time. After their last call, Plaintiff and similarly situated employees finish the computer work and reporting about their last call and/or close down their various software programs and computer.

50.     Defendants knowingly required and/or permitted Plaintiff and other similarly situated telephone-dedicated employees to perform unpaid work before and after their scheduled shift times. This unpaid work includes but is not limited to booting up computers, initializing several software programs, reading company issued emails and instructions at the beginning of their shifts, and completing customer service calls, securing their workstations, locking their desk drawers, and securing any customer or proprietary information at the end of their shifts.

51.     Prior to being allowed to work on the call center floor, Plaintiff and other similarly situated telephone-based employees were and are interviewed by employees and managers of Defendants.

52.     At all relevant times, Defendants had the power to hire and fire Plaintiff and other

persons similarly situated.

53.     Defendants regularly scheduled Plaintiff and other persons similarly situated to work 40 hours or more per workweek.  For example, Plaintiff worked overtime during the pay periods of March 1, 2015 through March 14, 2015 and March 15, 2015 through March 28, 2015.

54.     At Defendants' call centers, including the Naperville, Illinois call center where Plaintiff worked, Defendants' managers and supervisors worked on the call center floor during the workday, managing the work activities of the Plaintiff and other similarly situated persons.

55.     At their call centers, including the Naperville, Illinois call center where Plaintiff worked, Defendants' managers on the call center floor could and did regularly see with their own eyes that Plaintiff and similarly situated telephone-based employees arrived at their work stations before the start of their scheduled shift time, logged into Defendants' computers, and began working on their computers prior to the start of their scheduled shift time.

56.     Despite seeing and knowing that Plaintiff and similarly situated telephone-based employees performed work at their work stations prior to their scheduled shift time start, Defendants and their managers on the floor of the call center did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

57.     Defendants do not allow telephone-based employees to use Defendants' phones and computers for any personal use.  Additionally, Defendants generally prohibit and do not allow telephone-based employees to use their own personal cell phones on the call center floor.

58.     Defendants possess, control and/or have access to information and electronic data that shows the times each work day that Plaintiff and similarly situated telephone-based employees logged into Defendants' computers, network and telephone systems.

59.     By possessing, controlling and/or accessing the information in Paragraph 58,

Defendants knew that Plaintiff and similarly situated telephone-based employees worked prior to the start of their scheduled shift time.

60.     Despite having this information and knowing that Plaintiff and similarly situated telephone-based employees logged into Defendants' computers and network, initialized necessary software programs, and read company issued emails and instructions prior to the start of their scheduled shift time, Defendants did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

61.     Defendants knowingly required and/or permitted Plaintiff and those similarly situated to her to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, and completing customer service calls, closing down the software programs, and logging off the system after the end of their scheduled shift times.

62.     The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages approximately 10 to 15 minutes per day per person.

63.     Defendants monitored and directed the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

**B.     *Defendants Knew of and Assented to the Pre-Shift Work***

64.     Defendants' policy and practice permits and/or requires telephone-based employees to be logged into their phones and the call queue by to the employee's scheduled start time.

65.     In order to be logged into Defendants' telephone systems and call queue,

Defendants required and/or permitted Plaintiff and similarly situated telephone-based employees to arrive at their work station prior to their scheduled shift time and boot up computers, initialize several software programs, and read company emails and instructions.

66.     Defendants' policy and practice is to discipline telephone-based employees if they are not logged into their phones and ready to handle calls by the start of their scheduled shift time.

67.     This policy and practice of Defendants results in telephone-based employees, including the Plaintiff, to boot up their computers, initialize several software programs and/or read company emails and instructions prior to their start of their scheduled shift time.

68.     As set forth herein, via their policies and practices and through their own telephone and computer systems, Defendants knew and were aware that the telephone-based employees performed work prior to the start of their scheduled shift.

69.     Defendants did not instruct Plaintiff and similarly situated telephone-based employees to not log into their computers or telephone, or to not read company emails prior to the start of their scheduled shift time.  Rather, Defendants required, permitted and/or allowed Plaintiff and the putative class members to work prior to their scheduled shift time.

70.     By knowing of, permitting and/or requiring Plaintiff and similarly situated telephone-based employees to log into their computers, initialize their various software programs and/or read company email and instructions prior to the start of their scheduled shift time, Defendant assented to them performing this work.

C.     *Defendants' Failure to Pay Regular and/or Overtime Wages to Their Telephone-Based Hourly Employees*

71.     Defendants determined the rate of pay for Plaintiff and other similarly situated persons.

72.     Plaintiff and other similarly situated persons submitted their timesheets to

Defendants' managers for review prior to receiving their paychecks. These timesheets were reviewed and approved by employees of Defendants.

73.     Defendants supervised and controlled the work schedule of Plaintiff and other similarly situated persons.

74.     Plaintiff and those employees similarly situated are individuals who were, or are, employed by Defendants in customer service, sales, and similar positions at Defendants' call centers who were not paid for some or all of their work activities prior to the beginning of their shifts, during meal and rest breaks, or after the end of their shifts.

75.     Plaintiff and the other employees are similarly situated to one another because their duties consisted primarily of providing services related to cable and broadband offered by Defendants to their customers while working in Defendants' call centers. Plaintiff and others similarly situated all shared similar policies, job titles, job descriptions, training, job duties and compensation, among other things.

76.     Plaintiff and the other employees are also similar because Defendants did not pay them for all time they actually worked. Defendants knowingly required Plaintiff and the similarly situated individuals to perform unpaid work before and after their scheduled shifts, including but not limited to booting-up computers, initializing several software programs, reading company emails and instructions, and completing customer service calls.

77.     The net effect of Defendants' policies and practices, instituted and approved by company managers, is that Defendants willfully failed to pay regular and overtime compensation to Plaintiff and others similarly situated, and willfully failed to keep accurate time records to save payroll costs. Defendants thus enjoyed ill-gained profits at the expense of their hourly employees.

78.     Plaintiff and others similarly situated at times work or worked in excess of forty

hours per week for Defendants in a given workweek.

79. Defendants' policy and practice of requiring and/or permitting their employees, including Plaintiff and other non-exempt, hourly employees, to perform work without pay for such work performed, violates Section 6 of the FLSA, 29 U.S.C. § 206, Section 4 of the IMWL, 820 ILCS § 105/4, and Section 4 of the IWPCA, 820 ILCS § 115/4.

80. Defendants' policy and practice of requiring their employees to perform work without pay in many instances has caused and continues to cause Plaintiff and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a wage of 1.5 times their respective hourly rate for such work performed, as required by Section 7 of the FLSA, 29 U.S.C. § 207, and Section 4a of the IMWL, 820 ILCS § 105/4a.

81. Defendants' failure to compensate their non-exempt, hourly call center employees with the full amount of the applicable regular wage or overtime wage has caused Plaintiff and other similarly situated non-exempt call center employees to suffer harm.

82. Defendants' non-exempt, call center hourly employees are entitled to compensation for all time they worked without pay in any given workweek.

**D. Defendants' Failure to Pay Agreed-Upon Hourly Rates For Work To Which Defendants Assented**

83. At all times relevant hereto, Defendants paid, and agreed to pay, Plaintiff and similarly situated employees in Illinois more than the federal and state minimum wage.

84. For example, at the beginning of her employment, Defendants agreed to pay Plaintiff Porter $13.39 per hour for all work Defendants permitted and/or required of her, which is more than the applicable federal and state minimum wage. At all times relevant hereto, Defendants agreed to pay Plaintiff and a class of similarly situated Illinois employees more than the state

minimum wage for all work permitted and/or required by Defendants.

85.     At all times relevant hereto, Defendants agreed to compensate their hourly employees for all "work" that Defendants required and/or permitted.

86.     Booting up computers, initializing several software programs, reading company email or instructions, and completing customer service calls is "work" for which Plaintiff and similarly situated Illinois employees are entitled to their agreed-upon rate of pay.  Additionally, working during breaks and completing calls and logging off their phones and computers is "work" for which Plaintiff and similarly situated Illinois employees are entitled to their agreed-upon rate of pay.

87.     Despite their agreement to pay Plaintiff and similarly situated Illinois employees more than the statutory minimum wage for their work, and despite assenting to the work described herein, Defendants did not pay Plaintiff and certain other similarly situated Illinois employees their agreed-upon rate for performing all work permitted, required and/or assented to by Defendants. This work includes the time spent booting up their computers, initializing their software programs for their calls, and reading company email and instructions prior to the start of their scheduled shift time; the time spent completing customer service calls, closing down the software programs, and logging off the system after the end of their scheduled shift times; and the break time spent finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

88.     Defendants' failure to compensate Plaintiff and other similarly situated Illinois employees at their agreed-upon wage for work they permitted, required and/or assented to has caused Plaintiff and other similarly situated employees to suffer harm.

## COLLECTIVE ACTION ALLEGATIONS

89.     Plaintiff brings Count I of this Complaint as a collective action on behalf of herself and all other current and former hourly employees of Defendants who Defendants required to perform the work described herein without pay.

90.     Plaintiff's Counsel seek to send notice of this lawsuit to the following described persons:

> All persons who worked for Defendants as telephone-dedicated employees, however titled, and who were compensated, in part or in full, on an hourly basis throughout the United States at any time between March 8, 2015 and the present who did not receive the full amount of overtime wages earned and owed to them.

91.     There are questions of law or fact common to the employees described in paragraph 90.

92.     Plaintiff is similarly situated to the employees described in paragraph 90, as Plaintiff's claims are typical of the claims of those persons.

93.     Plaintiff's claims or defenses are typical of the claims or defenses of the persons described in paragraph 90.

94.     This is not a collusive or friendly action.  Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and her counsel will fairly and adequately protect the interests of the persons described in paragraph 90.

95.     A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

96.     At all relevant times, Defendants employed Plaintiff and the persons described in paragraph 90.

## CLASS ACTION ALLEGATIONS

97.     Plaintiff bring Counts II and III as a class action pursuant to Fed. R. Civ. P. 23 on

behalf of herself and all other current and former hourly employees of Defendants who Defendants required to perform the work described herein without pay.

98.     With respect to Plaintiff's IMWL claims, Plaintiff seeks to represent a class that is comprised of and defined as:

> All persons who worked for Defendants as telephone dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between March 8, 2015 and the present who did not receive the full amount of overtime wages earned and owed to them (the "IMWL Class").

99.     With respect to Plaintiff's IWPCA claim, Plaintiff seeks to represent a class that is comprised of and defined as:

> All persons who worked for Defendants as telephone dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between March 8, 2008 and the present whose hourly rate exceeded the applicable Illinois minimum wage and who did not receive the full amount of wages earned and owed to them (herein the "IWPCA Class").

100.     This action is being brought as a class action pursuant to Fed. R. Civ. P. 23, because the IMWL Class and IWPCA Class are so numerous that joinder of all class members is impracticable.

101.     Plaintiff and the members of the IMWL and IWPCA Classes have been equally affected by Defendants' practice of not compensating employees for all time worked.

102.     Plaintiff and the members of the IMWL and IWPCA Classes have been equally affected by Defendants' failure to pay all earned wages to Plaintiff and the class members.

103.     Furthermore, members of the IMWL and IWPCA Classes still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

104.     The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations that may exist between members of the Classes, if any.

105.     Plaintiff and the members of the IMWL and IWPCA Classes, as well as Defendants,

have a commonality of interest in the subject matter and the remedy sought.

106.     Plaintiff is able to fairly and adequately represent and protect the interests of the members of the IMWL and IWPCA Classes.  Plaintiff's counsel are competent and experienced in litigating large wage and hour and other employment class actions.

107.     If individual actions were required to be brought by each member of the Classes injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the IMWL and IWPCA Classes, to the Court, and to Defendants.  Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Classes are entitled.

108.     Plaintiff has retained counsel experienced in complex employment litigation and in class action litigation.

109.     Plaintiff and her counsel will fairly and adequately protect the interest of both classes.

## COUNT I – FLSA
### (Failure to Pay Overtime Wages)

110.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 96 as paragraph 110 of this Count I.

111.     Plaintiff, individually and on behalf and the members of the collective described in paragraph 90, asserts claims for unpaid overtime pursuant to the FLSA.

112.     At any and all times relevant hereto, Defendants were an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

113.     At any and all times relevant hereto, Defendants were an "employer" of Plaintiff and the members of the collective described in paragraph 90 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

114. At any and all times relevant hereto, Plaintiff and the members of the collective described in paragraph 90 were "employees" of Defendants as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e)

115. Plaintiff and the members of the collective described in paragraph 90 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

116. At all times relevant hereto, Defendants' failure to pay Plaintiff and the members of the collective described in paragraph 90 premium pay for all time worked over 40 hours in a week was willful in that, among other things:

    a. Defendants knew that the FLSA required them to pay time and one-half for all time worked over 40 hours in a week;

    b. Defendants failed to maintain true and accurate time records; and

    c. Defendants encouraged Plaintiff and the members of the collective described in paragraph 90 to not record all time worked.

117. As a direct and proximate result thereof, Plaintiff and the members of the collective described in paragraph 90 are due unpaid back wages and liquidated damages, pursuant to 29 U.S.C. § 216.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, demands judgment against Defendants, jointly and severally, and in favor of Plaintiff and all others similarly situated in a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

    a. Declare and find that the Defendants committed one or more of the following acts:

        i. Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party Plaintiff; and

        ii.  Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party Plaintiff.

b.  Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;

c.  Award liquidated damages on all wages and overtime compensation due to Plaintiff and all persons who opt-in as party Plaintiff;

d.  Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

e.  Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

f.  Grant leave to add additional Plaintiff by motion or any other method approved by the Court to conform with the proofs at trial; and

g.  Grant such further relief as the Court deems just and equitable.

## COUNT II – ILLINOIS MINIMUM WAGE LAW
### (Failure to Pay Earned Overtime Wages)

118.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 88 and 97 through 109 as paragraph 118 of this Count II, as if fully set forth herein.

119.    This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. § 1367.

120.    The matters set forth in this Count II arise from Defendants' violation of the overtime compensation provisions of the Illinois Minimum Wage Law, 820 ILCS § 105/4a. Plaintiff brings this action on her own behalf and on behalf of the members of the IMWL Class pursuant to 820 ILCS § 105/12(a).

121.    Defendants employed Plaintiff and the IMWL Class as "employees," as the term "employee" is defined Section 3(d) of the IMWL, 820 ILCS § 105/3(d).

122.    At all relevant times, Defendants were an "employer" of Plaintiff and the IMWL Class, as the term "employer" is defined by Section 3(c) of the IMWL, 820 ILCS § 105/3(c).

123.     Pursuant to 820 ILCS § 105/4(a), for all weeks during which Plaintiff and the members of the IMWL Class worked in excess of forty (40) hours, Plaintiff and members of the IMWL Class were entitled to be compensated at one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

124.     Defendants did not pay Plaintiff and members of the IMWL Class one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

125.     Defendants violated the Illinois Minimum Wage Law by refusing to compensate Plaintiff and the members of the IMWL Class at one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

126.     Pursuant to 820 ILCS § 105/12(a), Plaintiff and the members of the IMWL Class are entitled to recover statutory penalties in the amount of two percent (2%) per month of the amount of underpayments.

WHEREFORE, Plaintiff and the members of the IMWL Class pray for a judgment against Defendants, jointly and severally, as follows:

a.   That the Court determine that this action may be maintained as a class action;

b.   A judgment in the amount of one and one-half times Plaintiff's and the members of the IMWL Class' regular rate for all time they worked in excess of forty (40) hours per week;

c.   Statutory damages pursuant to the formula set forth in 820 ILCS § 105/12(a);

d.   Reasonable attorneys' fees and costs incurred in filing this action; and

e.   Such other and further relief as this Court deems appropriate and just.

### COUNT III – ILLINOIS WAGE PAYMENT AND COLLECTION ACT
**(Failure to Pay the Agreed Upon Rate For Work Assented to by Defendant)**

127.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 88 and 97 through 109 as paragraph 127 of this Count III as if fully set forth herein.

128.     Plaintiff, individually and on behalf of all others similarly situated, brings this Count III to recover from Defendants unpaid wages, overtime compensation, statutory penalties, attorneys' fees, and costs, pursuant to Section 14(a) of the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a).

129.     At all relevant times, Defendants employed Plaintiff and the IWPCA Class as "employees," as the term "employees" is defined by Section 2 of the IWPCA, 820 ILCS § 115/2.

130.     At all relevant times, Defendants were an "employer" of Plaintiff and the IWPCA Class, as the term "employer" is defined by Section 2 of the IWPCA, 820 ILCS § 115/2.

131.     At all relevant times, and at Defendants' request, Plaintiff and the members of the putative IWPCA Class performed work for Defendants.

132.     As set forth *supra*, Defendants assented to pay Plaintiff and the members of the putative IWPCA Class at an agreed-upon hourly rate at or in excess of the applicable Illinois Minimum Wage Law hourly rate, for all work Defendants permitted and/or required.

133.     As set forth *supra*, Defendants assented to the hourly employees performing the work described above by, among other means, Defendants' knowledge and awareness of the pre- and post-shift work described herein, as well as the work performed during breaks.

134.     Defendants regularly observed, without objection or negative comment, the record and documentation of having Plaintiff and the members of the putative IWPCA Class perform work prior to the start of their scheduled shift time, during breaks, and after the end of their scheduled shift time.

135.     During the course of their employment with Defendants, Plaintiff and similarly situated Illinois employees had an agreement with Defendants within the meaning of the IWPCA to be compensated for all time worked at the rates agreed to by the parties.  Defendants did not

pay Plaintiff or similarly situated Illinois employees for all hours worked at the rates agreed to by the parties as described herein.

136.     Plaintiff and the putative IWPCA Class members were entitled to be paid for all time worked at the rate agreed to by the parties.

137.     When Defendants hired Plaintiff and the members of the putative IWPCA Class and advised them of the specific hourly rate they would be paid, Defendants did not inform Plaintiff and the members of the putative class that they would not be paid for all the work Defendants required and/or permitted.

138.     Defendants have failed to pay Plaintiff and the members of the putative IWCPA Class the full amount due for all time worked on their regularly scheduled paydays, including but not limited to their final compensation, because Defendants did not pay them for the work described herein, in violation of the IWPCA, 820 ILCS § 115/4.

139.     Defendants have failed to pay Plaintiff and the putative IWPCA Class the full amount for all hours worked because of the improper practices described herein.

140.     Illinois Statutes 820 ILCS §§115/1 *et seq.* defines wages as "any compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties…".

141.     Under the IWPCA, payment to separated employees is termed "final compensation" and is defined as "wages, salaries, earned commissions, earned bonuses…and any other compensation owed the employee by the employer pursuant to any employment contract or agreement between the two parties."  820 ILCS § 115/2.

142.     Illinois Statutes 820 ILCS §115/4 requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after

the end of the pay period in which such wages were earned. Illinois Statutes 820 ILCS §115/5 provides that "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly schedule payday for such employee."

143. Defendants violated Illinois Statutes 820 ILCS §§115/1 *et seq.* by regularly and repeatedly failing to properly compensate Plaintiff and the putative IWPCA Class members for the actual time they worked each week within 13 days of the date such compensation was earned and by failing to properly compensate Plaintiff and the putative IWPCA Class members their rightful wages by the next scheduled payday after their separation.

144. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the putative IWPCA class have suffered and will continue to suffer lost wages and other damages.

WHEREFORE, Plaintiff and the members of the IWPCA Class pray for a judgment against Defendants, jointly and severally, as follows:

    a. That the Court determine that this Count III may be maintained as a class action;

    b. A judgment in the amount of all back wages due, as provided by the Illinois Wage Payment and Collection Act;

    c. Statutory damages pursuant to the formula set forth in 820 ILCS § 115/14(a);

    d. Reasonable attorneys' fees and costs incurred in filing this action; and

    e. Such other and further relief as this Court deems appropriate and just.

Dated: March 8, 2018                 Respectfully submitted,

                                   /s/ Thomas M. Ryan
                                   One of Plaintiff's attorneys

James X. Bormes                   Thomas M. Ryan
Catherine P. Sons                Law Office of Thomas M. Ryan, P.C.
Law Office of James X. Bormes, P.C.     35 East Wacker Drive

8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575

Suite 650
Chicago, Illinois 60601
(312) 726-3400