**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LASHAWNDA PORTER, individually and on behalf of all others similarly situated, | ) ) ) | No. 1:18-cv-01700 |
| | ) | Judge John Z. Lee |
| Plaintiff, | ) ) | Magistrate Judge Maria Valdez |
| v. | ) ) | |
| | ) | |
| WIDEOPENWEST, INC., WIDEOPENWEST ILLINOIS, LLC, and WIDEOPENWEST ILLINOIS, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**<u>PLAINTIFF'S MOTION AND MEMORANDUM FOR APPROVAL OF THE PARTIES'
FLSA COLLECTIVE ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I. Introduction ........................................................................................1

II. Background ........................................................................................1

III. Collective Action Certification for Settlement Purposes Only ...............................3

IV. Summary of Settlement Terms ...........................................................4

  A. Gross Settlement Amount ...........................................................4

  B. Net Settlement Amount................................................................4

  C. Formula for Distribution to Participating Collective Members .................4

  D. Released Claims...........................................................................5

  E. Service Award ............................................................................6

  F. Settlement Administration .............................................................6

  G. Attorney Fees and Costs ...............................................................8

V. The Settlement is Fair and Reasonable and Should Be Approved .........................8

  A. Bona Fide Dispute.......................................................................9

  B. The Settlement is a Fair and Reasonable Resolution................................10

    i. There is No Fraud or Collusion Behind the Settlement.....11

    ii. Complexity, Length, and Expense of Further Litigation ...11

    iii. The Stage of the Proceedings and Amount of Discovery Completed...........................................................12

    iv. The Probability of Plaintiffs' Success on the Merits ..........13

    v. The Range of Recovery .......................................................13

    v. The Opinions of Counsel ....................................................13

VI. The Service Award to Plaintiff Should be Approved as Fair and Reasonable ......13

VII. Plaintiff's Counsels' Request for Attorneys' Fees and Costs Should

Be Approved as Fair and Reasonable ...................................................................15

VIII.   Conclusion ...........................................................................................................18

Plaintiff, LaShawnda Porter, individually and on behalf of all others similarly situated, by her attorneys, moves for collective action certification of this matter for settlement purposes only and for approval of the settlement reached by the Parties. In support, Plaintiff states as follows:

## I.     Introduction

The Parties have reached a settlement under the Fair Labor Standards Act involving approximately 1,389 individuals who worked in four states during a three year recovery period. The total settlement fund is $450,000.00. Under the proposed settlement, each of the 1,389 individuals will receive approximately $9.33 for each full time week worked during the period of Match 8, 2015 to March 8, 2018. Thus, if an individual worked the equivalent of 50 full time workweeks during the recovery period, s/he will receive approximately $466.50. An individual who worked 100 full time workweeks will receive approximately $933.00, and if someone worked 150 fulltime workweeks, they will receive approximately $1,399.50. The proposed settlement contemplates a claims-made process and if someone does not submit a claim form, then that person will not release any claims against Defendants and will not receive a settlement payment. As set forth below, this a reasonable resolution of a bona fide dispute under the FLSA. Accordingly, this Court should approve this settlement.

## II.     Background

On March 8, 2018, Named Plaintiff filed this Action on behalf of herself and others similarly situated, alleging that Defendants failed to pay her and other similarly situated employees in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. (the "IMWL"), and Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*. (the "IWPCA"). Specifically, Plaintiff alleged that Defendants failed to pay Plaintiff and similarly situated employees for all daily pre- and post-shift work they performed.

Plaintiff and the proposed Collective Members worked as customer service representatives who handled phone calls with customers and field technicians regarding the phone, television and broadband internet services Defendants offered. (ECF No. 1, ¶¶ 2-5, 46). In her Complaint, Plaintiff sought certification of an FLSA collective comprised of Defendants' workers from Illinois, Georgia, Maryland and Colorado. (*Id.*, ¶ 90).

On March 29, 2018, Defendants filed a Motion to Dismiss the Complaint and an Answer denying the material allegations raised in the Complaint, including that Defendants violated any applicable wage and hour laws. (ECF Nos. 22, 23). Plaintiff filed her response to the Motion to Dismiss on April 27, 2018 and Defendants filed their reply on May 11, 2018. (ECF Nos. 30, 34).

Throughout the duration of this case, the Parties actively engaged in discovery. The Parties exchanged detailed collective-wide data regarding the claims, including payroll and rate of pay data and information for the Collective Members. The Parties have exchanged approximately 37,000 total pages of documents in discovery.

Before the Court ruled on the Motion to Dismiss, the Parties agreed to attempt resolution of the case via private mediation. The Parties ultimately retained a nationally recognized wage and hour mediator in Atlanta, Georgia, Mr. Hunter Hughes, Esq. The Parties engaged in an in-person mediation with Mr. Hughes in Atlanta, Georgia on September 18, 2018. The Parties did not reach a settlement on that date. However, the Parties and the mediator continued to engage in negotiations and eventually the mediator made a mediator's proposal, which the Parties subsequently accepted. Thereafter, the Parties negotiated and ultimately reached an agreement on the terms of a collective action settlement to resolve Plaintiff's FLSA claims. As set forth below, the proposed settlement involves an FLSA collective of approximately 1,389 individuals who worked in Illinois, Georgia, Maryland and Colorado.

Plaintiff and her counsel now present to this Court the Parties' Joint Stipulation and Settlement Agreement (the "Settlement Agreement"), which they believe is fair, reasonable, and equitable for the Plaintiff and the Collective Members. (The Settlement Agreement is attached hereto as Exhibit 1). Plaintiff seeks collective action certification for settlement purposes only and approval of the Parties' Settlement Agreement, and requests that this Court enter an Order that grants such relief, substantially in the form attached hereto as Exhibit 2.

## III.    Collective Action Certification For Settlement Purposes Only

Plaintiff seeks collective action certification of the settlement collective ("Collective Members") described in the Settlement Agreement, for settlement purposes only. At the October 2, 2018 status hearing, the Parties indicated to the Court that the proposed settlement would include a Rule 23 settlement for Illinois workers and an FLSA settlement for non-Illinois workers. Ultimately, however, the Parties agreed to a collective-wide settlement on behalf of all workers on a claims-made basis where a person will not release any claims if he or she does not participate in the settlement, as set forth in greater detail below.

Section 216(b) of the FLSA permits a plaintiff to file a collective action on behalf of herself and other "similarly situated" employees, to recover unpaid overtime wages and liquidated damages from employers who violate section 7 of the FLSA. 29 U.S.C. § 216(b). For purposes of this settlement, the standard for establishing collective action certification under 29 U.S.C. § 216 with respect to the Settlement Collective is met. Therefore, the Parties have agreed to stipulate to collective action certification. More specifically, the Parties stipulate and agree,[1] for settlement purposes only, that the Collective Members are similarly situated. For the reasons set forth herein,

---

[1] Defendants reserve the right, should this Court fail to grant approval of this Settlement, to contest every aspect of collective action certification under 29 U.S.C. § 216.

this Court should grant collective action certification for settlement purposes only and approve the proposed settlement as a reasonable resolution of a bona fide dispute.

## IV.    Summary of Settlement Terms

### A.    Gross Settlement Amount

The Parties have agreed – subject to the approval of this Court – to fully and finally resolve the claims in this action for a maximum gross settlement amount ("GSA") of $450,000. This amount comprises all payments to individuals contemplated by the Settlement Agreement, including settlement payments to eligible claimants; attorneys' fees, costs and expenses related to the action; all fees and costs of settlement administration; the employee's and the employer's share of payroll taxes; and an individual service payment to Plaintiff Porter.  (Ex. 1, ¶ 4).

### B.    Net Settlement Fund

After all Court-approved deductions to the GSA, including a reasonable service award, attorneys' fees, costs of litigation, costs of settlement administration, and the employer's share of payroll taxes, the remaining net settlement funds ("NSF") will be distributed to each individual consenting to join the Collective Action Settlement who timely submits his/her Claim Form.  The estimated NSF is $258,286.00.  (Ex. 1, ¶ 8, 10).  As set forth in greater detail below, the NSF is the GSF minus i) the proposed settlement payments to the Collective of $258,286.00 in the aggregate; ii) a service award of $7,500.00 for the named Plaintiff; iii) attorneys' fees of $150,000.00; iv) costs not to exceed $12,500; and v) the claims administration costs, estimated by the third-party claims administrator to be $21,714.00.

### C.    Formula for Distribution to Participating Collective Members

Each claimant who worked at least one full-time workweek for Defendants during the Relevant Time Period will receive a gross amount of approximately $9.33 for each such full week

worked as a phone representative for Defendants during the recovery period of March 8, 2015 to March 8, 2018. (Ex. 1, ¶ 10(a)). For example, if a Collective Member worked as a phone representative for 50 workweeks (i.e., approximately one year) during the relevant time period, that individual is eligible to receive a gross settlement payment of $466.50. A Collective Member who worked as a phone representative for 100 workweeks (or approximately two years) will receive $933.00 and a collective member who worked as a phone representative for 150 workweeks (approximately three years) will receive $1,399.50.00 under the settlement. There are approximately 1,389 Collective Members.

### D.    Released Claims

Individuals who elect to participate in the settlement will release and discharge Defendants, and any and all of its or their predecessors, successors, assigns, parents, subsidiaries, affiliates, and divisions (whether incorporated or unincorporated) and each of its or their current and former officers, directors, shareholders, equity owners, partners, managers, supervisors, agents, insurers, attorneys, advisors, accountants, representatives, agents, trustees, heirs, executors and administrators, from any and all claims asserted, or which could have been asserted, in the Complaint, including, without limitation, all claims for unpaid minimum wages, straight-time wages and overtime wages (as well as all interest, penalties, liquidated damages, punitive damages, attorney's fees and costs relative to such claims) related to their employment with any of the Released Parties. This release includes any such claims under the Fair Labor Standards Act, common law and under Illinois, Colorado, Georgia, Maryland or any other state's laws or ordinances or local laws that are based on the claims asserted in the Complaint. This release covers the time period for any such claims that arose prior to September 18, 2018. With respect to benefit plans and claims under the Employee Retirement Income Security Act ("ERISA"), this release

encompasses claims that could have been brought under ERISA, but only to the extent that such claims are based on the settlement payments under this settlement.

Notwithstanding the foregoing and notwithstanding any terms or provision to the contrary in this Settlement Agreement, the Collective Members do not release or waive any claims that may not be released or waived unless otherwise allowed by applicable state and/or federal law.

If a Collective member does not wish to participate or does not send in a claim form, then s/he will not release any wage and hour claims or any other claims.

### E.    Service Award

The Settlement Agreement contemplates a service payment to the named Plaintiff in the amount of $7,500.00, to acknowledge her service to the case, settlement and Collective Members. (*Id.*, ¶ 8(c)). The named Plaintiff is also providing a general release, whereas the Collective Members' release is limited to their wage and hour claims against Defendants. (*Id.*, ¶ 3).

### F.    Settlement Administration

The Parties agree that Analytics Consulting, LLC will handle the administration of the settlement as a third-party claims administrator and will, *inter alia*, mail the Notice of Collective Action Settlement ("Notice") and Claim Form via first class U.S. mail, process the receipt of claims, and process and mail settlement payments to Collective Members who file a valid and timely claim form. (*Id.*, ¶¶ 6, 10, 11). Defendants will provide the name and last known mailing address of each Collective Member. (*Id.*, ¶ 9(b)). The claims administrator will thereafter update the address through the National Change of Address database and then mail to each individual a Notice and a Claim Form. (*Id.*, ¶¶ 6, 11(b)). If any mailing of the Notice and Claim Form is returned as undeliverable, the Settlement Agreement requires the Claims Administrator to then perform an entry level skip trace and resend the Notice and Claim Form based on the new address

6

obtained. (*Id*., ¶ 11(c)). The mailing date is then used to calculate the 45-day period within which all claim forms must be received by the Claims Administrator in order to be considered timely and valid. (*Id*.).

The proposed Notice sets forth the relevant terms of the Settlement, and directs the Collective Members to contact Collective Action Counsel or the Claims Administrator if the potential claimant has questions. (Ex. 3). By signing the proposed Claim Form, the Collective Member confirms that s/he has read the Notice and understands its terms. (Ex. 4). Timely return of the completed and signed Claim Form is the only step required for opting-in to the settlement and receiving the applicable distribution pursuant to the Settlement Agreement.

Within approximately 28 days of the Court's approval of the Settlement and conditional certification of the collective action for settlement, the claims administrator shall mail to each Collective Member the Notice and the Claim Form. (Ex. 1, ¶ 11(c)). Collective Members will have forty-five (45) days from the day of mailing to postmark and send in a Claim Form. (*Id*., ¶¶ 6, 11(c)). The claims administrator will report the names of all timely claimants to counsel for the Plaintiff and Defendants. (*Id*., ¶ 11(c)).

Approximately 38 days after the close of the Opt-In Period, the claims administrator will: (1) mail each Claimant his/her respective distribution check to their last known address as provided by the claimant on his/her completed Claim Form. (*Id.,* ¶ 6). Any remaining portion of the Net Settlement Fund for which a claim is not timely returned by a Collective Member shall remain the property of Defendants. (*Id*., ¶10(d)). Settlement checks that remain uncashed for a period of one hundred twenty (120) days shall escheat to an appropriate state agency or fund, as determined by the Settlement Administrator, and a Collective Member will be able to claim their settlement funds from the respective agency or fund. (*Id*., ¶ 12(b)).

### G.    Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, and subject to Court approval, Plaintiff's Counsel seek $150,000.00 in attorneys' fees, which is one-third of the settlement fund, plus reimbursement of costs not to exceed $12,500.00 for out-of-pocket costs incurred in litigating, mediating and resolving this matter.  (*Id.*, ¶ 8).  The reasonableness of the requested attorneys' fees and costs incurred is set forth in detail in Section VII below and in the Declarations of Plaintiff's Counsel attached here to as Exhibits 5 and 6.

## V.    <u>The Proposed Settlement Should be Approved as Fair and Reasonable</u>

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class and collective actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *American International Group, Inc. v. ACE INA Holdings, Inc.*, 2012 U.S. Dist. LEXIS 25265 (N.D.Ill., Feb. 28, 2012) (Gettleman, J.).

In many FLSA actions in the Seventh Circuit and throughout the country, a one-step approval process is appropriate in FLSA settlements that do not include Rule 23 classes.  Collective actions under Section 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165

(1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). The approval process of Section 216(b) does not include a mechanism for collective members to object to the terms of the settlement, but as set forth below, the Parties seek to provide notice and the Collective Members will have the opportunity to decline their proposed settlement and not release any claims.

Unlike Rule 23(e), Section 216(b) does not require the standard preliminary approval proceedings, fairness hearings and final approval proceedings. Still, the Court has a duty to determine whether the proposed settlement is i) a fair and reasonable resolution of ii) a bona fide dispute over FLSA provisions. *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011). Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11 Civ. 592, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler*, 2011 WL 4729789, at *8-9. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts*, 2014 WL 4804252, at *2; *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)("It is a well settled principle that the law generally encourages settlements.").

### A. Bona Fide Dispute

The settlement occurred only after the Parties engaged in extensive discovery and voluminous document production and after the Parties engaged in numerous meet and confers regarding the various legal and factual issues in this case. Additionally, the settlement was the

result of arm's-length negotiations and a mediation with a nationally recognized, third party mediator. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement pending before the Court after private mediation with the close assistance of an experienced mediator. The record demonstrates that the Parties had a bona fide dispute prior to reaching their proposed settlement.

### B.   Fair and Reasonable Resolution

As a framework for determining what is fair and reasonable, Courts in the Seventh Circuit consider the following factors in evaluating the fairness of a collective action settlement:

> the strength of plaintiffs' case compared to the amount of the settlement; settling defendants' ability to pay; complexity, length and expense of further litigation; the amount of opposition to the settlement; evidence of collusion; opinions of counsel; and, the stage of the proceedings and amount of discovery completed.

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1998). However, in performing the evaluation, courts consider the settlement in its entirety rather than emphasizing a single factor. *Id*. at 1199. Where the settlement is the result of extensive arm's length negotiation there is a strong presumption of fairness. *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

Additionally, the Court may also consider the inherent difficulties of proof or other obstacles to success at trial in a case such as this one.  See *Moreno v. Regions Bank,* 729 F.Supp.2d 1346 (M.D. Fla. 2010) ("Problems, for example, in proving hours-worked or 'non-exempt' status – or the presence of some other lawful defense to payment (if any) – may warrant a reasonable compromise, if the court approves."); *Meek v. Wachovia Corp.,* 2007 WL 2728404, 2 (M.D. Fla. Sept. 17, 2007) ("The settlement to Plaintiff is a reflection of the difficulties of proof Plaintiff

faced, should he proceed to trial, and makes allowances for the inherent difficulties and costs of a trial.").

i.      There is No Fraud or Collusion Behind the Settlement

In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation was "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000).

This settlement was the result of adversarial, arm's-length negotiations that took place after a detailed investigation, discovery involving a document production of approximately 37,000 pages of information, as well as collective-wide payroll and employment history data for 1,389 individuals. Hunter Hughes, Esq., an experienced and nationally recognized mediator who specializes in wage and hour cases, assisted the parties in exploring and negotiating the terms that ultimately resulted in the Stipulation of Settlement. Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace,* 671 F. Supp. 819, 822 (D. Mass. 1987) ("where…a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").

ii.     The Complexity, Expense, and Likely Duration of the Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. Here, absent settlement, Plaintiff would be required to incur the time and expense of fact depositions and potential expert depositions and briefing a motion for collective action certification which Defendants were determined to defeat. Even after the Court may have certified a collective, the Parties would be required to prepare for the burden and expense of a motion to decertify as well as summary judgment motions.

Should this litigation continue, there are a range of possible outcomes including ones far less favorable to the Collective Members, including the very real prospect that they might receive nothing at all. Indeed, significant litigation risks remain in obtaining collective action certification in this matter (as the matter will be certified for settlement purposes only), proving liability, and establishing damages, and aspects of the case could be subject to ultimate rejection.

A trial to be conducted relating to the claims of hundreds of opt-in plaintiffs and the defenses raised by Defendants with respect to the collective *and* to individual collective members poses its own set of complexities, ranging from various legal and factual issues and proof issues, but also to coordinating testifying opt-ins from states across the country. Post-trial litigation, including appeals, would be a near certainty. Thus, additional litigation undoubtedly would increase the expenses and complexity of this litigation. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litigation*, 164 F.Supp.2d at 1019.

There are substantial complexities in the remaining stages in this case, from expert discovery, to summary judgment proceedings, certification proceedings, decertification proceedings, trial and appeal. The remaining expense would be great, given the costs of depositions and potentially flying in witnesses from across the country to testify at a trial in Chicago. The duration could have taken several more years' time. Accordingly, the complexity, expense and duration of the remaining litigation here favors settlement.

        iii.    The Stage of the Proceedings and Amount of Discovery Completed

This case was resolved only after hard fought and adversarial litigation and the production of 37,000 pages of information and collective-wide discovery and data. Thus, the stage of litigation has advanced to a state that Plaintiff's counsel can fully and fairly evaluate the value of the settlement.

### iv.    The Probability of Plaintiff's Success on the Merits

Plaintiff remain steadfast about the validity and merits of her claims. However, she acknowledges that significant risks remain regarding whether she ultimately will prevail on those claims. Those risks include defeating summary judgment, certification briefing, decertification motions, succeeding at the liability and damages phases of trial and post-trial motions, and succeeding on any appeal to the Seventh Circuit.

### v.    The Range of the Recovery

This settlement provides each Collective Member $9.33 per full time workweek that the Collective Member worked between March 8, 2015 and March 8, 2018. This equates to approximately 29 minutes of unpaid overtime for each full time week worked during the recovery period. This is a very good result for the Collective. It represents approximately 39-58% of the unpaid work Plaintiff alleged in her Complaint – that she worked approximately 10 to 15 minutes of daily unpaid pre- and post-shift work (i.e., 50 to 75 minutes weekly). (ECF No. 1, ¶¶ 6, 62).

### vi.    The Opinions of Counsel

Plaintiff's Counsel are experienced in class and collective action litigation, and had a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the settlement. In Plaintiff's Counsel's opinion, the settlement is fair, reasonable, and adequate. (Ex. 5, Ryan Decl., ¶ 17; Ex. 6, Bormes Decl., ¶ 19). It is appropriate for the Court to place considerable weight on the endorsement of this settlement by Plaintiff's counsel. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F.Supp.2d at 1020.

## VI.    The Service Award to Plaintiff Should Be Approved as Fair and Reasonable

The Settlement Agreement contemplates a service payment of $7,500.00 to the named Plaintiff to acknowledge her service to the Collective. *In re Synthoid Marketing Litigation*, 264 F.3d 712, 722-23 (7th Cir. 2001); *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.").

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016.

An analysis of those factors warrants a Service Award of $7,500.00. First, Plaintiff took substantial actions to protect the interests of potential collective members, and those actions resulted in a substantial benefit to the 1,389 Collective Members. The named Plaintiff participated in an extensive pre-suit investigation, provided documents crucial to establishing her claims, extensively reviewed the claims presented, and answered written discovery. (Ex. 5, Ryan Decl., ¶ 18; Ex. 6, Bormes Decl., ¶ 20). She participated in every way that was asked of her. She met with Plaintiff's Counsel during this case, and always provided useful information. In doing all of the above, she assumed significant risk that "should the suit fail, [she could] find [herself] liable for the defendant's costs". *Espenscheid*, 688 F.3d at 876- 77 (internal citations omitted). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Id.* Without the efforts of the named Plaintiff, this settlement would not have been achieved. The named Plaintiff is also providing a general release of any and all claims arising out of her employment with the Defendants. Although Plaintiff was no longer employed by Defendants when she filed the lawsuit, she merits recognition for risking retaliation from future employers for

the benefit of all settlement members. *See, e.g. Beesley v. Int'l Paper Co.*, No. 06 cv 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing that suits against former employers also carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer).

This District routinely approves service awards similar to or even greater than the award requested here. *See e.g., American International Group, Inc. v. ACE INA Holdings, Inc*., 2012 U.S. Dist. LEXIS 25265, *59 (N.D. Ill. Feb. 28, 2012) (Gettleman, J.)(approving a service award of $25,000.00 per named plaintiff); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819, *7 (S.D. Ill. Jan. 22, 2004) (Herndon, J.)(approving service awards as high as $20,000.00 per named plaintiff); *Schmidt v. Smith & Wollensky LLC,* Case No. 09-2752 (N.D. Ill.) (Dkt. #78, ¶ 5) (awarding $10,000 service award in Illinois Minimum Wage Law case); *Chesemore*, 2014 WL 4415919, *5, *12 ($10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions; noting that courts in the Seventh Circuit routinely approve service awards ranging from $5,000 to $25,000); *see also Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, *5-6 (S.D. Ohio May 24, 2013) (recognizing that class members benefited from the class representative's contributions to litigation, and approving a service award of $12,500 when other class members' recovery would range from $260 to $1,000 and the gross settlement fund was $452,380).

## VII.    Plaintiff's Counsels' Request for Attorneys' Fees and Costs Should Be Approved

The FLSA provides that reasonable attorneys' fees and costs shall be awarded to prevailing plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs

of the action."). If this Court grants approval of the settlement, the Named Plaintiff and the Collective Members here will be prevailing parties, because they will have an award entered in their favor in the total amount of $450,000.00.

Defendants have agreed not to oppose Plaintiff's counsels' request for fees in an amount up to One Hundred Fifty Thousand Dollars ($150,000.00), which represents one-third of the settlement fund. (Ex. 1, ¶ 8(a)). Under the common fund doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from 33% to 40% in comparable litigation. *See Gaskill v.Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (upholding award of 38% of common fund, and stating that "The typical contingent fee is between 33 and 40 percent…."); *see also Meyenberg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 52962 at *5 (S.D.Ill., July 31, 2006) (Wilkerson, J.) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentage in this legal marketplace for comparable commercial litigation.").

Plaintiff's counsel here seek a fee of one-third of the common fund, which is reasonable and in accordance with the fees awarded in the case law set forth above, and is consistent with the standard contingent fee percentage in the legal marketplace for comparable cases. *See Gaskill*, 160 F.3d at 362; *Meyenberg*, 2006 U.S. Dist. LEXIS 52962 at *5. In wage and hour litigation – like this case – fee awards of between thirty-three and forty percent are traditional in common fund cases. *Id*. Notably, Plaintiff's counsel have been awarded attorneys' fees and costs in the amount of forty percent (40%) of the common fund obtained for the class. *See Williams-Green v. J.*

16

*Alexander's Restaurants, Inc.*, No. 09-cv-5707, Doc. No. 138 (N.D. Ill., Dec. 21, 2012), (Cole, J.); *Chambers v. Chase*, No. 11 cv 6014, Doc. No. 73 (N.D. Ill., Aug. 14, 2013) (Keys, J.); *Nimely v. Randstad General Partners (US), LLC*, No. 12-cv-10431, Doc. No. 85 (N.D.Ill. Mar. 25, 2014) (Bucklo, J.); *Williams v. Illinois Title Loans, Inc*., 13 CH 24303 (Circuit Court of Cook County, Nov. 24, 2014) (Kennedy, J.).

The proposed Settlement procured by Plaintiff's counsel brings substantial value to the Collective Members and the fees sought are within the range of reasonableness under Seventh Circuit case law. The fact of a significant and guaranteed monetary recovery without the uncertainty or risks of certification, trial and appeals qualifies this settlement as an outstanding result. Additionally, the release that the Collective Members will sign in order to participate in the settlement is limited only to their unpaid wage claims against Defendants. Thus, any claims a Collective Member may have, other than those which were or could have been asserted in this litigation, remain unaffected. The absence of a general release exemplifies the results achieved for the class. *See Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1103-04 (D.N.M 1999) (noting that the limited, rather than general, nature of the release was further evidence of an exceptional result in favor of Collective Members).

Lastly, Defendants have agreed not to oppose the request of Plaintiff's counsel for reimbursement of litigation costs in an amount not to exceed Twelve Thousand Five Hundred Dollars ($12,500.00). (Ex. 1, ¶ (8)(a)). These costs are primarily for filing fees, travel costs to Atlanta, Georgia for the mediation, the mediator's fee (Plaintiff's portion of the fee was $6,350.00), and IT costs for the coding and processing of the approximate 37,000 pages of documents produced electronically. (Ex. 5, Ryan Decl., ¶ 22; Ex. 6, Bormes Decl., ¶ 24). The costs are reasonable and were incurred in the prosecution of this litigation.

## VIII.  <u>Conclusion</u>

For all of the reasons set forth above, this Court should grant collective action certification for settlement purposes only and approve the Settlement reached by the Parties.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court (i) enter the Order attached hereto as Exhibit 2 granting collective action certification for settlement purposes only and approving the Parties' Settlement Agreement; and (ii) grant such further relief as this Court deems equitable and just.

<div style="margin-left: 40%;">

Respectfully submitted,

LaShawnda Porter, individually and on behalf
of a class of persons similarly situated,

<u>/s/ Thomas M. Ryan</u>
One of Plaintiff's Attorneys

</div>

| | |
|---|---|
| Thomas M. Ryan | James X. Bormes |
| Law Offices of Thomas M. Ryan, P.C. | Catherine P. Sons |
| 35 East Wacker Drive | Law Office of James X. Bormes, P.C |
| Suite 650 | 8 South Michigan Avenue |
| Chicago, Illinois  60601 | Suite 2600 |
| (312) 726-3400 | Chicago, Illinois 60601 |
| tom@tomryanlaw.com | (312) 201-0575 |
| | jxbormes@bormeslaw.com |
| | cpsons@bormeslaw.com |